IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00248-KAS

A.B.[1],

    Plaintiff,

v.

FRANK BISIGNANO[2], Commissioner of Social Security,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#7], filed March 21, 2025, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for social security disability insurance pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* Plaintiff filed an Opening Brief [#9] (the "Brief"), Defendant filed a Response [#10] in opposition, and Plaintiff filed a Reply [#15]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] Frank Bisignano is the current Commissioner of Social Security and is substituted for former Acting Commissioner Leland Dudek as Defendant in this case. *See* Fed. R. Civ. P. 25(d).

case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[3]

## I.    Background

On July 13, 2021, Plaintiff filed an application for disability and disability insurance benefits under Title II. Tr. 33.[4] Plaintiff alleged disability beginning January 12, 2020. *Id*. His claim was denied on December 28, 2022, and again upon reconsideration on September 18, 2023. *Id*. On April 25, 2024, an administrative law judge (ALJ) issued an unfavorable decision. Tr. 30-48. On October 7, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 17-19.

The ALJ first determined that Plaintiff met the Act's insured status requirements through September 30, 2022, and that he did not engage in substantial gainful activity from January 12, 2020, the alleged onset date, through September 30, 2022, his date last insured. Tr. 35. The ALJ then found that, through his date last insured, Plaintiff suffered from the following severe impairments: (1) coronary artery disease/status-post coronary artery bypass graft, (2) status-post cerebral vascular accident, (3) degenerative disc disease of the lumbar and cervical spine, and (4) osteoarthritis of the left wrist. Tr. 36. The ALJ also found Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 38.

---

[3] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#8]; *Reassignment* [#12].

[4] The Court refers to the Transcript of the Administrative Proceedings, located at Docket No. 7, by the sequential transcript numbers instead of the separate docket numbers.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work,[5] including

> lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, sitting up to six hours and standing and walking up to four hours in an eight-hour day, pushing and pulling as much as lifting and carrying, but is limited to occasional climbing of ramps and stairs, never climbing ladders or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. Claimant is also limited to frequent handling with the left hand. Claimant is further limited to occasional exposure to extreme cold, extreme heat, dust, odors, fumes, pulmonary irritants, and no exposure to unprotected heights or moving mechanical parts.

Tr. 39. Based on the RFC and the testimony of an impartial vocational expert, the ALJ found that, through his date last insured, Plaintiff could perform his relevant past work as a programmer. Tr. 47-48. Therefore, the ALJ found that Plaintiff was not disabled at step four. *Id*.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review).

## II.     Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

---

[5] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the

4

Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and modification omitted).

**A.      The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe

impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him] from performing [his] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence

6

"must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.    Analysis

Plaintiff argues that the ALJ erred (1) when evaluating and accounting for RFC limitations arising from arthritis in his left wrist; (2) when determining the persuasiveness of opinion evidence; and (3) failing to account for Plaintiff's mild mental limitations. *Brief* [#9] at 8-20.

### A.    The RFC

Plaintiff argues the ALJ erred by failing to include more restrictive fingering and handling limitations in the RFC due to left wrist arthritis. *Brief* [#9] at 8-13. The RFC includes no fingering limitations and permits frequent handling. Tr. 39. Plaintiff contends that in reaching this determination, the ALJ omitted critical evidence and mischaracterized the record in reaching this determination. *Brief* [#9] at 8-9.

The record does not support Plaintiff's position. The ALJ thoroughly reviewed the medical evidence and hearing testimony concerning Plaintiff's left wrist arthritis. Tr. 40, 43-45, 47. At the administrative hearing, Plaintiff testified that he had experienced left wrist pain since his first surgery in 1990. Tr. 40, 73. He also stated that, during the relevant period from January 12, 2020, through September 30, 2022, he could generally lift 50 to 60 pounds, though arthritis sometimes prevented him from lifting anything with his left wrist. Tr. 40, 73, 75-76. This testimony reflects intermittent limitations rather than a consistent inability to use the wrist.

7

The contemporaneous medical evidence likewise does not establish disabling functional limitations. In June 2020, during an unrelated urgent care visit, Plaintiff reported a prior diagnosis of rheumatoid arthritis in his left wrist with intermittent swelling. Tr. 42 (citing Tr. 905). He also reported that he had not attempted over-the-counter ibuprofen to manage his symptoms. Tr. 905. This minimal treatment undermines his allegations of severe, persistent limitations.

In November 2020, Plaintiff saw orthopedist Dr. Thomas Mordick, II, for increased wrist pain and swelling. Tr. 43 (citing Tr. 1092-93). Dr. Mordick previously saw Plaintiff three years prior for left wrist pain, suspected the pain was rheumatologic, and recommended that Plaintiff see a rheumatologist, but Plaintiff never did. Tr. 43 (citing Tr. 1092). During the November 2020 visit, Plaintiff reported decreased function and severe pain when placing weight on the wrist. *Id*. (citing Tr. 1092). However, the physical examination showed largely intact functioning: full range of motion limited by pain and swelling, full strength, normal sensation, negative Tinel's sign, and good finger motion with intact flexors and extensors. *Id*. (citing Tr. 1092). Plaintiff denied numbness or tingling and acknowledged that he had not experienced finger joint pain in years because "someone told him to self inject them with peptides, and that made everything go away." Tr. 1092. These findings do not support additional fingering limitations.

At that visit, Dr. Mordick again recommended a rheumatology consultation, which Plaintiff declined, opting instead to pursue alternative injections from someone he knew. Tr. 43 (citing Tr. 1092). Plaintiff's refusal to follow recommended treatment further undermines his allegations of finger and handling limitations. *See* Soc. Sec. Ruling 16-

3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ may consider a claimant's efforts to seek and follow treatment when evaluating symptom severity).

Notably, this November 2020 visit represents the only wrist-specific treatment during the relevant period (January 12, 2020 through September 30, 2022). Nevertheless, the ALJ considered some post-period evidence to the extent it sheds light on Plaintiff's wrist impairment before the date last insured. Tr. 44.

Substantial evidence supports the ALJ's conclusion that the post-date-last-insured evidence did not compel a finding of disability. In October 2022, X-rays showed severe arthritis, and Dr. David Schnur advised that only a wrist fusion would provide significant improvement. Tr. 44 (citing Tr. 1045, 1106). Plaintiff did not seek additional treatment for his wrist until May 2023. Tr. 1050. At that time, Dr. Imran Choudhry diagnosed "advanced end-stage osteoarthritis" and recommended total wrist fusion. Tr. 45 (citing Tr. 1050). On appeal, Plaintiff repeatedly emphasizes this "end-stage" diagnosis. *Brief* [#9] at 12; *Reply* [#15] at 1, 3, 5, 7. But a diagnosis alone does not establish disability. *Nunez v. Colvin*, 175 F. Supp. 3d 1258, 1267 (D. Colo. 2016) (citing *Coleman v. Chater,* 58 F.3d 577, 579 (10th Cir. 1995) (explaining the medical condition's "mere presence" is insufficient; rather, the condition "must render claimant unable to engage in any substantial gainful employment") (modification omitted)). Although the ALJ did not use the "end stage" terminology, he considered Dr. Choudhry's findings and treatment recommendations. Tr. 45.

In June 2023, Dr. Mordick again documented largely preserved function, including 50-degree extension, 30-degree flexion, full finger motion, full strength, and intact sensation, while recommending a total wrist arthrodesis. Tr. 45 (citing Tr. 1091). He also

noted that Plaintiff's desire to lift weights made arthroplasty unsuitable. *Id*. (citing Tr. 1091). These findings continue to show functional capacity inconsistent with additional fingering restrictions.

The ALJ reasonably concluded that the evidence did not support more restrictive limitations during the relevant period. The record instead shows limited treatment, largely normal strength and sensation, and Plaintiff's repeated refusal to pursue recommended care. Social Security Ruling 16-3p instructs that the Agency considers a claimant's efforts to seek and follow treatment when evaluating symptom intensity and persistence. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). Conversely, conservative treatment or a failure to follow prescribed treatment may undermine allegations of severe symptoms. *Id*. These factors reasonably undermine Plaintiff's allegations of disabling symptoms.

Plaintiff argues that the ALJ failed to consider all post-date-last-insured evidence and never stated that he excluded evidence on that basis. *Reply* [#15] at 3. The record contradicts this assertion. The ALJ expressly stated that he reviewed later evidence "to the extent . . . it may provide information on impairments that existed" during the relevant period. Tr. 44. The Court finds no error in the ALJ's focus on evidence from and near the relevant period, as Plaintiff must establish disability before the date last insured. *See* 20 C.F.R. § 404.131; *Henrie v. U.S. States Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

Moreover, Plaintiff's reliance on records from August 2023 through February 2024 lacks persuasive force. In August 2023, nearly a year after the date last insured, Plaintiff first reported radiating pain, numbness, and finger symptoms, which he attributed to a

neck and spine injury from weightlifting. Tr. 1127. This record marks the first documented complaint involving the fingers, especially notable given his November 2020 report that he had not experienced finger joint pain in years. Tr. 1092. Subsequent records reflect similar complaints, some improvement with therapy, and continued reluctance to pursue recommended surgical treatment. Tr. 1218, 1225, 1228. In February 2024, Plaintiff reported that three physicians had recommended additional surgery, but he wanted a fourth opinion. Tr. 1218.

This evidence reflects a worsening condition rather than Plaintiff's functioning during the insured period. It does not clearly link the later-developed finger symptoms to his earlier wrist arthritis and supports the ALJ's decision to omit it.

The ALJ applied the correct legal standards and supported his findings with substantial evidence. *Lax*, 489 F.3d at 1084. Accordingly, this assertion of error does not provide a basis for relief on appeal.

## B.    Opinion Evidence

In his next issue on appeal, Plaintiff challenges both the state agency physician opinions and the ALJ's evaluation of those opinions. *Brief* [#9] at 15-16. As in his prior argument, Plaintiff asserts that the agency physicians failed to consider post-date-last-insured medical evidence relevant to his wrist arthritis and disability claim. *Id*. The Court disagrees.

At the initial review level, the agency physician did not specifically address Plaintiff's wrist, despite listing arthritis among his impairments, and therefore included no related limitations in the opinion. Tr. 86, 98-103. At reconsideration, however, the agency physician conducted a thorough review and summary of the medical record, including

evidence related to Plaintiff's wrist. Tr. 107-09. Dr. Glenn Gade concluded that Plaintiff's limitations restricted him to frequent handling. Tr. 115-16. Plaintiff criticizes Dr. Gade for relying on only three visits, November 2020, October 2022, and June 2023, when assessing his wrist arthritis. Tr. 109. That criticism misses the mark.

Because the November 2020 visit constitutes the only wrist-specific treatment during the relevant period, Dr. Gade reasonably relied on that record as the primary contemporaneous evidence. Tr. 109. He also considered the October 2022 and June 2023 visits to evaluate whether later findings shed light on the severity of Plaintiff's condition during the insured period. *Id*. For the same reasons discussed above, medical evidence after June 2023 does not provide substantial support for Plaintiff's wrist impairment or resulting limitations during the relevant period. Thus, Plaintiff's challenge to the substance of the reconsideration opinion fails.

Plaintiff next argues that the ALJ did not adequately explain the persuasiveness of the agency physician opinions. *Brief* [#9] at 16. He contends that, although the ALJ adopted the wrist-related limitation from Dr. Gade's opinion, the ALJ failed to explain how the opinion was supported by objective medical evidence and consistent with the record as a whole. *Id*. (citing Tr. 47).

The governing regulations require less than Plaintiff suggests. An ALJ evaluates medical opinions using five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(c). "The two most important factors are supportability and consistency with the entire record." *Roy o/b/o Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)).

12

Regarding supportability, the ALJ must consider whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). "The supportability analysis looks at whether the medical source's opinions are supported by the source's own notes, diagnoses, and explanations." *R.L.M. v. Kijakazi*, No. 22-cv-03179-NYW, 2023 WL 8355963, at *8 (D. Colo. Dec. 1, 2023).

Regarding consistency, the ALJ must compare the medical source's opinions and "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

While the Regulations do not mandate at what depth the ALJ must discuss supportability and consistency, the ALJ must at least "provide an explanation that allows the reviewing court to follow [his] reasoning and communicates how [he] considered [those two factors] for each medical source's opinions." *R.L.M.*, 2023 WL 8355963, at *8 (internal quotation marks and citation omitted).

The Court does not read the ALJ's assessment of the agency opinions in isolation. Instead, the Court reviews the decision as a whole. The ALJ discussed examinations showing full or near-full range of motion, full strength, normal sensation, and intact finger function. Tr. 43-45 (citing Tr. 1045, 1049-50, 1091, 1092, 1106, 1275-77). He also noted Plaintiff's minimal treatment, delayed care, and repeated refusal to pursue recommended

interventions such as injections and surgery. *Id*. These findings directly support the conclusion that Plaintiff retained the capacity for frequent handling.

The ALJ further reinforced the consistency of the agency opinions by citing Plaintiff's activities during the relevant period, including frequent biking, such as a 30-mile ride, and swimming up to 1.5 miles per day. Tr. 47 (citing Tr. 818-19, 1000). These activities reasonably contradict allegations of disabling hand limitations and align with the assessed RFC.

Read as a whole, the decision clearly explains why the ALJ found Dr. Gade's opinion persuasive. Plaintiff's argument fails because it isolates a single paragraph rather than engaging with the ALJ's full analysis. The Tenth Circuit permits courts to rely on findings from other sections of the decision and does not require the ALJ to repeat the same analysis in multiple places. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005); *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018) (finding that the ALJ's reference to "all [medical records] discussed above" in his decision to discount a treating physician's opinion still enabled the reviewing court to "follow the adjudicator's reasoning" and "determine that correct legal standards have been applied") (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

## C.    Mild Mental Impairments

Plaintiff argues that the ALJ failed to account for his mild mental impairments in the RFC. *Brief* [#9] at 17-20. He argues that the ALJ committed reversible error at step four by not discussing mild limitations in mental functioning that the ALJ found "persuasive" at step two. *Id*. at 18. Defendant counters that the governing regulations require only that the ALJ *consider* non-severe impairments when assessing a claimant's

14

RFC and that the ALJ did so. *Response* [#10] at 2-3, 8. For reasons discussed below, the Court finds no reversible error.

"[A]ll medically determinable impairments, severe or not, must be taken into account at [the] later steps [of the ALJ's sequential evaluation]." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (emphasis omitted); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (in the RFC assessment, "the ALJ must consider the combined effect of all the claimant's medically determinable impairments, whether severe or not severe") (emphasis omitted). "The governing SSA regulations do not mandate that the ALJ specifically address the degree of functional limitations assessed at step two and three when subsequently formulating a claimant's RFC. Rather, the regulations require only that the ALJ must consider the limitations resulting from a claimant's severe and non-severe impairments when subsequently assessing an RFC." *E.R.D. v. O'Malley*, No. 23-cv-02155-LTB, 2024 WL 3276158, at *5 (D. Colo. July 2, 2024) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

At step two, the ALJ applied the "paragraph B" criteria as part of the psychiatric review technique and found that Plaintiff had no more than mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. Tr. 36. The ALJ considered the psychological evaluation report prepared by Mac Bradley, PhD, a consulting forensic psychologist. Tr. 37-38 (citing Ex. 13F). Dr. Bradley's report noted Plaintiff's problems with short-term memory and attention and concentration, but Plaintiff's overall level of attention and concentration was sufficient for interview and testing purposes. Tr. 37 (citing Tr. 1036). During the interview, Plaintiff appeared to have

15

adequate long-term memory, and he did not demonstrate significant deficits in planning, problem solving, thinking, reasoning, or judgment. *Id.* (citing Tr. 1037). On psychological testing, Dr. Bradley noted that Plaintiff did not appear to have given maximum effort on the test and, therefore, surmised that the results "may be a slightly low estimate of his intellectual disabilities." *Id*. (citing Tr. 1038). The ALJ noted that Dr. Bradley's assessment of Plaintiff did not indicate significant deficits, and Dr. Bradley diagnosed Plaintiff with mild vascular neurocognitive disorder, without behavioral impairment, and found no more than a mild limitation in any area of mental functioning. *Id*. (citing Tr. 1039-40). The ALJ found Dr. Bradley's opinions persuasive based on the psychological testing results, Plaintiff's presentation in the interview with Dr. Bradley, his independent ability to manage activities of daily living, his part-time teaching position at a community college in 2022, and his parti-time computer programming job in 2023. *Id*. The ALJ also noted that Plaintiff's medical records showed few mental health complaints, little or no mental health treatment, and no findings of abnormal mental status, such as limitations in memory, cognition, attention, concentration, thought process, hygiene, insight, judgment, or his ability to interact with others. Tr. 38. Additionally, the ALJ noted that Dr. Bradley's opinions aligned with the findings of two state agency psychological consultants, who found no more than a mild limitation in any paragraph B mental area. *Id*. At the conclusion of his step two analysis, the ALJ expressly stated, "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." Tr. 38.

At step four, the ALJ included no mental limitations in the RFC. Tr. 39. That omission does not establish error. In his decision, the ALJ expressly addressed Plaintiff's

non-severe mental impairment and explained that it caused no more than minimal limitations in his ability to perform basic mental work activities. Tr. 36. He further explained that Plaintiff's mild limitations in the paragraph B areas did not translate into work-related restrictions. *Id*. This analysis satisfies the ALJ's obligation to consider non-severe impairments when formulating the RFC. Although the ALJ did not repeat this explanation in the RFC section, the Court can follow his reasoning without duplication. *See Giles v. Kijakazi*, No. CIV-22-1075-STE, 2023 WL 4188204, at *4 (W.D. Okla. June 26, 2023) (affirming ALJ's step four conclusion that the plaintiff's mild mental limitations did not warrant limitations in the RFC, although the ALJ's comprehensive analysis of the plaintiff's mental impairments occurred at step two). The Tenth Circuit does not require an ALJ to restate the same analysis in multiple sections of a decision. See *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012); *Webb*, 750 F. App'x at 721.

Plaintiff also contends that the ALJ erred by finding the state agency opinions assessing mild mental limitations persuasive while failing to explain any inconsistency between those opinions and the RFC. *Brief* [#9] at 19. This argument fails because the RFC does not conflict with opinions assessing only mild mental limitations. Findings at steps two and three do not automatically translate into work-related restrictions. Even moderate limitations may not require RFC restrictions, depending on the evidence. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) (explaining that a "finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment"); *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (same). Instead, the ALJ must determine whether the claimant's symptoms actually limit his ability to work.

*See Gallegos v. Kijakazi*, No. 21-1169 DHU/GJF, 2023 WL 2553922, at *12 (D.N.M. Mar. 17, 2023). The ALJ did exactly that.

After evaluating the medical opinions and other evidence regarding Plaintiff's mental impairments, the ALJ concluded that Plaintiff's mild limitations did not warrant workplace restrictions. Tr. 38. He also specified that the RFC "reflects the degree of limitation" identified in the paragraph B analysis. *Id*.

Plaintiff's remaining argument is speculative. He suggests that a combined analysis of his impairments "may have" resulted in additional mental limitations and a different outcome. But he identifies no specific limitation the ALJ should have included and no evidence the ALJ failed to consider. This omission proves fatal to his claim. *See Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (criticizing the plaintiff's failure "to explain specifically what additional limitations were needed based on his anxiety or any other impairment"). At most, Plaintiff disagrees with the ALJ's conclusions. A "mere difference of opinion does not empower [a] [c]ourt to usurp the SSA's role as factfinder." *Gallegos*, 2023 WL 2553922, at *11. Accordingly, the Court finds no error in the ALJ's consideration of Plaintiff's non-severe mental impairments.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 31, 2026                    BY THE COURT:


Kathryn A. Starnella
United States Magistrate Judge